HEARD NOV. TERM, 1871.

## BOYCE vs. SHIVER.

Since the Act of 1843, providing that no unrecorded "mortgage, or other instrument of writing in the nature of a mortgage," shall be valid against subsequent creditors and purchasers, an unrecorded equitable mortgage of real estate is void against subsequent creditors without notice, of the mortgagor.

One of the objects of the Act was to place subsequent creditors of the mortgagor on the same footing with subsequent purchasers from him, and to protect both against secret liens, whether legal or equitable.

Where the drawer of a promissory note requests a third person to take up the note, promising, if he will do so, to pay him the amount due thereon, a new debt between such third person and the drawer for the full amount of the note, is created by the fact of the former's taking it up, although he pays for it much less than such amount.

BEFORE GLOVER, J., AT RICHLAND, APRIL TERM, 1871.

Bill in Equity by James P. Boyce, plaintiff, against Robert C. Shiver and William Shiver, defendants.

The case will be understood from the following statement of facts, and extracts from the testimony of the plaintiff, taken at the trial.

The bill in this suit was filed 28th April, 1868, to set up an equitable lien to a house and lot in Columbia, known as the "Assembly" or "Shiver" House, and the following are the material facts: February 15, 1858, the plaintiff sold said house and lot to George T. Mason for $6,500. The conveyance was duly signed and sealed, but, by agreement, was not to be delivered until the pay-

ment of the purchase money. Mason entered upon and held possession of the premises until November, 1860, when he transferred all of his interest to the defendant, William Shiver, for $8,000, his indebtedness to the plaintiff at that time being $6,180, besides interest. It was then agreed between the plaintiff, Mason, and the defendant, William Shiver, that the latter should be substituted as purchaser in the place of Mason, and should assume the debt of Mason, amounting to $6,180 and interest; and that upon the execution of a conveyance by the plaintiff to William Shiver for said house, William Shiver would give his bond for the purchase money and a mortgage of the property, to secure the payment of it. Upon this agreement, William Shiver went into possession, and, by various payments, reduced his debt, January 5, 1866, to $1,658.35. On that day the plaintiff duly executed a conveyance for the house and lot, and forwarded it to William Shiver, together with a bond for the balance of the purchase money, and a mortgage of the property, to be executed by William Shiver, and to be returned to the plaintiff; and although frequently requested to do so, William Shiver failed to execute the mortgage until November, 1866, when it was returned to the plaintiff, and was not recorded by him, because, as he alleges, the date was too remote to admit of registry within the time prescribed by law. The plaintiff, therefore, sent to William Shiver a second mortgage, which was executed April 12, 1867, and was not recorded by plaintiff, because, as he alleges, of the death of his attorney, who had charge of his papers, the plaintiff then being out of the State. In the meantime, June 19, 1866, William Shiver caused the conveyance from the plaintiff to himself to be recorded in the proper registry; and July 19, 1866, he confessed a judgment to his son and co-defendant, Robert C. Shiver, for $5,419, with interest from 25th June, 1866, which was entered up, and a *fieri facias* was lodged the same day in the Sheriff's office for Richland County. By virtue of this execution, and after the filing of this bill, the Shiver House and lot were sold at Sheriff's sale to Robert C. Shiver for $2,500. The indebtedness of William Shiver, and on which the judgment was confessed, consisted of $1,500, advanced by Robert C. Shiver to William Shiver within three months prior to January, 1866, and also sundry notes of William Shiver, discounted by two banks in Columbia, and which were paid by Robert C. Shiver a few days before the confession of judgment. The payment of said notes was made in the bills of said banks, purchased by said Robert C. Shiver, at 25 or 28 cents on the dollar, money in Columbia then

commanding an interest of from 5 to 10 per cent. per month. The notes discounted by the banks and paid by Robert C. Shiver were renewals of originals made prior to January, 1861. Robert C. Shiver was induced, as is alleged, to pay the bank notes, in consideration that William Shiver should thereupon confess judgment to him for the aggregate of said notes, and the advance made of $1,500. The bill charges that Robert C. Shiver was a joint purchaser with William Shiver of the " Shiver House," and was fully cognizant of all the facts and transactions connected with said purchase up to the confession of judgment; that the recording the conveyance and the confession of judgment were with the intent to defraud the plaintiff, and that Robert C. Shiver was a participant in such fraud. And the prayer of the bill is that the judgment confessed by William Shiver may be set aside as fraudulent and void, or if it be not wholly vacated then that so much of the amount of the same as consists of the bank notes may be reduced to the sum actually paid for them, that the mortgage made by William Shiver to the plaintiff may be set up as a *lien* prior to the judgment confessed to Robert C. Shiver; and that the defendant, William Shiver, be foreclosed of his equity of redemption in the mortgaged premises, and that the same be sold to satisfy the mortgage debt. The defendants, severally, deny that Robert C. Shiver was in anywise interested with his co-defendant, William Shiver, in the purchase of the house and lot; and Robert C. Shiver says he never heard, of the mortgage until some time after the confession of judgment to him, and he avers that it was long subsequent to the said confession of judgment that he had any knowledge of the fact that the conveyance was not to be recorded until the bond and mortgage were fully executed; and that all knowledge or notice of the existence of said mortgage was derived from the plaintiff's attorney, and long after the confession.

Rev. Dr. J. P. Boyce testified as follows : " In pursuance of his (Wm. Shiver's) request, I caused to be executed, by Col. C. J. Elford, a conveyance to Wm. Shiver of the property known as the Shiver House, on the 5th day of January, 1866, and transmitted the said papers to him for execution of the bond and mortgage. These papers were transmitted either to Spartanburg or Columbia— I think to Spartanburg ; and I submit a letter of his from Columbia, dated 12th February, 1866, acknowledging the reception of the papers, in which he assures me they shall be executed and properly done."

[This letter, with others used at a former hearing before Judge Boozer, who died before pronouncing his decree, was lost in his hands, but its contents, as above stated, were admitted.]

Rev. Dr. Boyce: "There was no privity of contract between myself and the sons of Col. Shiver. All knowledge of their connection in the matter was derived from Col. Shiver. Col. Shiver represented to me that his two sons joined with him in the purchase, and I beg to submit a letter of Col. Shiver, about 24th October, 1861, in which that fact is distinctly admitted by Col. Shiver."

[The original of this letter was also lost in the hands of Judge Boozer, but its contents were admitted.]

Rev. Dr. Boyce: "I received payment upon the property from Col. Wm. Shiver, on the 2d day of November, 1860, $500. This was the only payment in good money that was ever made to me. On the 6th day of February, 1863, I consented to take $1,000 in Confederate money; made no objection to doing so. On the 14th October, 1863, I received $1,000 in Confederate money; also, on, the 19th December, 1863, I received $1,500 in Confederate money. In the spring of 1864, Col. Wm. Shiver came to me and said that by the Funding Act of the Confederate Government, his wife would be compelled to lose a considerable amount of the earnings of her hard labor, unless I would consent to take whatever old currency she might have at its face, or take the amount in Confederate four per cent. bonds. I then regarded myself as being very well off. I had always had a high personal regard for Mr. and Mrs. Shiver. I had received acts of kindness from Col. Shiver, and as a matter of generous action, I consented to take whatever amount he might send me in four per cent. bonds. He sent me $3,000 of such bonds, which were credited on his bond as of the date of 6th April, 1864. These were all the payments I ever received on the bond."

His Honor, the Circuit Judge, after stating the facts, concluded his decree as follows:

GLOVER, J. In setting up his equitable *lien*, the plaintiff contends that the judgment confessed to Robert C. Shiver should be set aside as fraudulent; and this depends upon the fact whether Robert C. Shiver had either actual or constructive notice of the existence of the mortgage. If he had, he was, both at law and in equity, as much affected by it as he would have been by registry. Such notice must be clear and undoubted, amounting in effect to evidence. The mere want of caution is said not to amount to notice, unless a party

shall wilfully abstain from inquiry, after such information as should lead a prudent man to ascertain the truth. The distinction is recognized between notice to rebut an equity, and notice, as in this case, to supply the defect of registration. To supply the want of registration," says Chancellor Harper, " the notice must be full, explicit and clearly proved."—*City Council* vs. *Page*, Sp. Eq., 212. In *Price* vs. *White*, Bail Eq., 216, Colcock, J., announcing the judgment of the Court, says : " I am not aware of any case, either in the Court of Equity, or in the Court of Law, in this State, where anything short of direct notice has been considered equivalent to recording; and I am one of those who think that the Court went too far, even in admitting that." The defendants, in their answer, respectively deny that Robert C. Shiver was anywise interested with his father in the purchase of the Shiver House and lot; and there is no evidence to overcome these denials, which are directly responsive to the allegations of the bill. So, too, respecting actual and constructive notice. The fact of such notice had by Robert C. Shiver is distinctly averred in the bill, and is explicitly denied by the answer of Robert C. Shiver. It is not proved by the evidence of the plaintiff, on his examination in Court, and is directly disproved by the evidence of Robert C. Shiver, who was examined as a witness; and, according to the evidence of William Shiver, who, so far from informing Robert C. Shiver of the mortgage or the agreement concerning it, he, on the contrary, assured him that there was no incumbrance whatever on the property. The allegation of the bill, that there was actual or constructive notice, being expressly denied by the answer, and no proof having been offered by witnesses, nor by corroborating circumstances and a witness, the defendant is entitled to the benefit of his answer denying notice. .

It was contended that a mortgage, incomplete for want of registry, may be set up as an equitable lien, and cases were referred to establishing and enforcing such liens in equity against subsequent creditors without notice. It is not necessary to notice the several classes of these imperfect securities mentioned by Mr. Adams, (Adams' Eq., 122,) not only because there has been no uniformity in the decisions of the different States of the Union in regard to the effect of such liens, but because our statute law, in respect to unregistered mortgages, has materially affected the principles applicable to such equitable liens. In England the doctrine has been long established, and acted upon, that although the equitable lien will not prevail against a subsequent purchaser for valuable consideration without

notice, yet that a Court of Equity will enforce it against subsequent creditors; and many cases may be found in our reports up to 1843 decided upon the same principle.— *Welsh* vs. *Usher*, 2 Hill Ch., 167 ; Chancellor Harper refers to *Taylor* vs. *Wheeler*, (2 Ves., 564,) and other cases decided in England and South Carolina, where agreements for mortgages, incomplete for want of delivery, &c., have been established as equitable liens against prior judgment creditors. These cases, however, were decided before the passage of the Act of 1843, (11 Stat., 256,) which provides " that no mortgage or other instrument of writing in the nature of a mortgage of real estate shall be valid so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded in the office of Register of Mesne Conveyance for the District wherein such real estate lies, within sixty days from the execution thereof." If, therefore, the provisions and policy of this Act are of force, it cannot be contended that an equity can arise in favor of an unregistered mortgage, which the Act declares invalid, both against creditors and purchasers; and I apprehend that no case can be found since the passage of the Act of 1843, where a mortgage, not recorded within the prescribed time, has been held to be a preferred lien against a subsequent judgment creditor without notice.

The plaintiff also contends that Wm. Shiver's indebtedness, by the notes discounted by the two banks in Columbia, was contracted long before his engagement to execute the mortgage; that by acquiring the ownership of said notes, no new debt against Wm. Shiver arose, but the old indebtedness was merely continued and transferred, and that Robert C. Shiver is not, therefore, a subsequent creditor of Wm. Shiver, in the meaning of the Act of 1843. As between the banks and Wm. Shiver, the indebtedness was not in its origin subsequent to his engagement respecting the mortgage; but as between him and his son, Robert C. Shiver, it certainly was. There was not merely a contract between Robert C. Shiver and the banks as to the transfer of the notes, but there was another and a distinct agreement between him and his father, Wm. Shiver, which in substance was, that in consideration that Robert C. Shiver would take up the bank notes, and therefore relieve the endorsers from their liability, he, Wm. Shiver, would confess a judgment for an amount embracing the advance made by Robert C. Shiver and the principal and interest of the bank notes, without regard to what he had paid for them. One of the motives of Wm. Shiver, in asking the aid of Robert C. Shiver, was to relieve his endorsers, and that was to be effected by

the satisfaction of the notes. The advance of $1,500 and the bank notes was a debt acknowledged by Wm. Shiver, and for which he confessed the judgment; and without proof of a fraudulent intention thereby to defeat the plaintiff's lien, or to defeat, hinder or delay the collection of his debt, I apprehend the Court would not vacate the judgment *pro tanto*, by reducing it to the amount actually paid by Robert C. Shiver for the bank notes.

It is ordered that the bill, as against Robert C. Shiver, be dismissed with costs, and without costs as against Wm. Shiver.

The plaintiff appealed on the grounds:

1. Because the question was, not of the registration of a legal mortgage, but of the lien of an equitable mortgage, insusceptible of registration.

2. Because the agreement of the defendant, Wm. Shiver, to execute a legal mortgage created an equitable mortgage on the 5th day of January, 1866, the day on which the plaintiff executed the conveyance, and delivered it, with the bond and mortgage, to be executed by the said Wm. Shiver.

3. Because an equitable mortgage is a lien, superior to any other claim, except that of a subsequent purchaser for valuable consideration without notice.

4. Because no legal mortgage susceptible of registration was ever executed by the said Wm. Shiver to the plaintiff until long after his confession of judgment to the defendant, Robert C. Shiver, and the recording of the conveyance.

5. Because the Act of 1843 does not apply to equitable mortgages, but to legal mortgages susceptible of registration, the language of the Act being, "mortgage, or other instrument of writing in the nature of a mortgage."

6. Because, even if the Act did apply to equitable mortgages, the indebtedness of Wm. Shiver to Robert C. Shiver does not fall within its provisions, the debt of $1,500 being admitted to have been created before, and not after, the 5th day of January, 1866, the day on which the equitable mortgage was created, and the other debts being mere payments by Robert C. Shiver of antecedent debts of Wm. Shiver, which merely put him in the place of the antecedent creditors.

7. Because the relation of father and son between the defendants—the admission by the defendant, Robert C. Shiver, that he had knowledge of the transaction between his father and the plaintiff until after the war; the fact that he was the custodian of his father's papers, of which the unexecuted bond and mortgage formed a part;

the fact that the conveyance of the plaintiff to Wm. Shiver was delivered by Robert C. Shiver to the Clerk for registration, was paid for and taken out by him; the extreme haste with which the debts of Wm. Shiver were purchased by Robert C. Shiver, the conveyance recorded, and the confession of judgment made and entered up, together with the positive evidence of the plaintiff—fix notice upon Robert C. Shiver, and affect him with the fraud charged.

8. Because, in any event, his Honor should have rejected the antecedent debt of $1,500, and reduced the remaining indebtedness to the amount actually paid for it by the defendant, Robert C. Shiver, and the plaintiff should have had the benefit of such reduction.

9. Because, inasmuch as the property was sold under the execution of the said Robert C. Shiver, and purchased by him *pendente lite*, his Honor should have ordered an inquiry as to the value thereof, and given to the plaintiff the benefit of any excess therein over and above the indebtedness of the said Wm. Shiver to the said Robert C. Shiver.

10. Because the property, having been sold, *pendente lite*, did not bring its real value, and his Honor should at least have ordered a re-sale in order to ascertain its true value in relief of the plaintiff.

*Pope*, for appellant :

That what is known as the " vendor's lien," a lien given by the law itself to secure the payment of the purchase money of real estate sold and conveyed, (*Mackreth* vs. *Symmons*, 15 Ves., 342,) has not existed in this State since the decision in *Wragg* vs. *Comptroller General*, 2 DeS., 508, we fully concede. Upon no such ground do we stand. Our position is that the transaction between William Shiver and the plaintiff, in reference to the sale and conveyance of the Shiver House, and the mortgage to be given to secure the payment of the balance of the purchase money, created an equitable mortgage of the property which the plaintiff has the right to enforce against Robert C. Shiver—Hill. on Mortg., 647 ; Adams' Eq., 123.

It is clear, upon the facts, that William Shiver practiced a gross fraud upon the plaintiff, and it is equally as clear, upon the law, that the transaction created an equitable mortgage which bound him and the land.—*Russell* vs. *Russell*, 1 Lead. Cas. in Eq., 541 ; *Read* vs. *Simmons*, 2 DeS., 552; In the matter of *Howe*, 1 Paige, 125.

Then as to Robert C. Shiver. If he held as a purchaser for valuable consideration without notice, the plaintiff would be concluded;

but his position is not that of purchaser but of creditor. The question then arises, and it is the principal question which the case presents, whether a subsequent creditor, without notice, is protected against an equitable mortgage.

That the law, as it stood prior to the Act of 1843, did not protect such a creditor, is clear upon the authorities, and the fact that he obtained a judgment for his debt, before he had notice of the lien, added nothing to the strength of his equity. Assume that the debt to Robert C. Shiver was contracted after the lien in favor of plaintiff was created; assume that the judgment was confessed before notice of the lien was given; assume all this, and yet, according to every reported case, the lien must prevail, notice having been given before the purchase at Sheriff's sale.—*Basset* vs. *Nosworthy*, 2 Lead. Cases in Eq., 33; *Williams* vs. *Hollingsworth*, 1 Strob., 103; *Bank* vs. *Gourdin*, Sp. Eq., 20; *Dow* vs. *Ker*, Sp. Eq., 417; *Massey* vs. *McIlwain*, 2 Hill Ch., 428; Pow. on Mortg., 459. The subsequent general creditor without notice has no equity as against the equitable mortgagee, because the former has no interest or lien of any kind, whereas the latter has a specific lien amounting to an estate or interest; the subsequent judgment creditor has no such equity, because his lien is general, and, therefore, inferior; a general lien binds all that the debtor owns, but it binds only his interest or estate in any particular piece of property, whatever that interest or estate may be. If the interest or estate be subject to liens, the judgment binds only what remains after such liens are satisfied.

A purchaser at Sheriff's sale, even if he be a third person, is bound by all the equities, whether he had notice of them or not, that bound the judgment creditor.—*Freeman* vs. *McBane*, 2 Jones' Eq., (N. C.,) 44; *Bank* vs. *Campbell*, 2 Rich. Eq., 179; *Williams* vs. *Hollingsworth*, 1 Strob. Eq., 103; *Winslow* vs. *Chiffelle*, Harp. Eq., 19; *Taylor* vs. *Fields*, 4 Ves., 396. But, in this case, the plaintiff in the judgment was the purchaser; he paid no money; his bid went as a credit upon the judgment, and he had notice of the equity before the sale.

It is clear, then, that Robert C. Shiver is not protected by his position as purchaser at Sheriff sale, nor by his right as a subsequent judgment creditor, and it is equally as clear that as a subsequent general creditor without notice—assuming him to be a subsequent creditor—he is not protected against the plaintiff's equitable mortgage, unless the law has been changed by the Act of 1843, 11 Stat.,

256, which provides " that no mortgage or other instrument of writing in the nature of a mortgage of real estate, shall be valid so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded * * * within sixty days from the execution thereof." This Act does not change the law in relation to equitable mortgages ; it relates only to legal instruments—to " mortgages or other instruments of writing in the nature of mortgages."—*Harper* vs. *Barsh*, 10 Rich. Eq., 154. The instruments which these terms embrace, are those well known legal instruments called mortgages, or some legal " instruments of writing" of the same nature. An equitable mortgage is a very different thing ; it grows out of a transaction, whether written or not, or partly written and partly verbal, or it may grow out of acts—it is a lien given by the law and not by the contract of the parties. How can a mortgage arising from a " mere deposit of title deeds," or from the " implied agreement of the parties," or from the " justice of the case," (1 Hill. on Mortg., 647 ; Adams' Eq., 123,) be recorded ? But the rule is general—it applies to all equities, whether arising from deeds or acts or otherwise. Such equities are " wholly without the scope and operation of the recording Acts.—*LeNeve* vs. *LeNeve*, 2 Lead. Cas. Eq., 137 ; *Grimestone* vs. *Carter*, 3 Paige, 421.

It is clear, then, that the Act of 1843 does not include equitable mortgages. It follows that the law applicable to the case before the Court is the law as it existed when that Act was passed. By that law an equitable mortgage was good against subsequent creditors without notice, and as Robert C. Shiver can occupy no higher or better position than that of a subsequent creditor, his defence falls to the ground.

[The counsel also contended, upon the evidence, that Robert C. Shiver was not a subsequent creditor ; that the debts for which the confession was taken existed before the mortgage ; and that his position was that of an assignee or purchaser of the debts.]

*Carroll & Melton, McMaster & Le Conte*, contra:

1. The defendant's, Wm. Shiver's, contract with the plaintiff to execute a mortgage of the Assembly or Shiver House and lot, was not, of itself, an *equitable mortgage*, in its proper sense, but simply an agreement to execute a legal mortgage.—2 Story Eq., § 1020 ; *Coming ex parte*, 9 Ves., 115 ; *Norris* vs. *Wilkinson*, 12 Ves., 192.

2. That the mortgage contemplated was never executed until

April, 1867, and was, therefore, "insusceptible of registration" at an earlier date—was palpably the result of the plaintiff's own supineness and *laches*.

3. By the Act of 1843, subsequent creditors are placed upon the same footing with subsequent purchasers for valuable consideration without notice; and if the latter would prevail against the plaintiff's alleged equitable mortgage, as is conceded, so also must the former.

4. The Act of 1843 is in terms directly applicable to the mortgage contracted for between the plaintiff and the defendant, Wm. Shiver; and the opposite exposition of the statute would be in effect to offer a premium for its disregard and violation, and reward for *laches* and negligence.

5. If the equitable mortgage claimed by the plaintiff was created by the agreement for the legal mortgage, then that equitable mortgage must be regarded as having come into existence on the 2d November 1860, and not on the 5th January, 1866. And as to his demand of $1,500 for moneys advanced, Robert C. Shiver, the defendant, is, therefore, a creditor of Wm. Shiver subsequent to such equitable mortgage.

6. But if the demand of $1,500 for moneys advanced were deducted from the amount of the judgment confessed by Wm. Shiver to Robert C. Shiver, there would still remain of the judgment debt $3,919, exclusive of interest, a sum exceeding by more than $1,400 the price ($2,500) at which the Shiver House and lot were sold by the Sheriff under that judgment; and if this be so, then it is wholly immaterial whether the demand of $1,500 arose before or after the plaintiff's alleged equitable mortgage.

7. The payment by Robert C. Shiver of Wm. Shiver's notes held by two of the Columbia banks, did not serve merely to "put him in the place of the antecedent creditors," (the banks,) but, on the contrary, by the express terms of the agreement between Robert C. Shiver and Wm. Shiver, operated to satisfy and extinguish those notes, and to create a new and distinct debt against Wm. Shiver.

8. Between Robert C. Shiver on the one side, and the plaintiff and Wm. Shiver, or either of them, on the other, there existed no relation of trust or confidence which disabled R. C. Shiver from contracting with Wm. Shiver as he did respecting the notes held by the two Columbia banks, and the consideration he (R. C. Shiver) should receive for paying and satisfying them.

9. Notice to R. C. Shiver of the mortgage contracted for between

the plaintiff and Wm. Shiver was not only not proved, but was fully and effectually disproved; and as the Circuit Judge has so decided, and the evidence upon which he acted has been wholly omitted from the appellants' brief, the question of notice, it is respectfully submitted, ought not even to be .entertained by the Court.

10. The plaintiff's application to have the mere agreement for a legal mortgage set up as an equitable mortgage, is an appeal to the jurisdiction of the Court to decree the specific execution of contracts; a jurisdiction never exercised when the plaintiff has not shown himself "ready; desirous, prompt and eager to perform the contract," nor when the decree would operate harshly and inequitably, or against public policy.—1 Story Eq., §§ 776 and 709; *Seaton* vs. *Slade*, 7 Ves., 265, (Am. Notes,) 3 Lead. Eq. Cases, 80; *Woolkan* vs. *Hearn*, 2 Lead. Eq. Cases, (Am. Notes,) 699.

11. The injury, of which the plaintiff complains, has been brought upon him by his own *laches* and negligence, and he is precluded from relief by the principle of law, that "whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.—*Lickbarron* vs. *Mason*, 1 Smith Lead. Cas. 854; 1 Green. Ev., § 207 ; *Vermont* vs. *Delaire*, 2 Des., 323.

Sept. 3, 1872.   The opinion of the Court was delivered by

Moses, C. J. The equity of the plaintiff, as presented by the brief, is certainly of a high character, and it was due to his zealous counsel, who pressed their conviction of the right of their case in an able and learned argument, that we should not only give it a full consideration, but examine with care the various views by which a reversal of the Circuit decree was sought.

If it were within our power to administer what we might regard as justice, measured alone by our individual conception of it, we most probably would conclude that the plaintiff was entitled to all that he claimed by his bill.   But it is not within our province to substitute our own notions of abstract right, in the place of the well established rules which have been prescribed for our adoption by the wisdom of the law, fortified, as they have been for ages, by their acceptance as the proper standard for the regulation and control of property, and sanctioned by the experience and wisdom of the judicial luminaries who have been called on to enforce them.

Impotent and vain, too, would be the endeavor to prevent injustice, by limiting or modifying the application of legal principles by

our own considerations of equity, regardless of the well defined and accepted rules decreed by " the great masters" who have built up a science with principles now almost as well defined and ascertained as those of the common law itself.

The decree determines the question of fraud in favor of the defendant, R. C. Shiver, and we see nothing in the evidence which shews that he had any notice of the circumstances attending the execution of the title by the plaintiff to his father, William Shiver. The deception which he practiced on the plaintiff cannot affect the judgment, if R. C. Shiver occupied the position of a subsequent creditor without notice, for there was no duty or obligation which could place him in the relation of a trustee.

It becomes, therefore, necessary to enquire whether the said R. C. Shiver stood as an antecedent or a subsequent creditor of the said Wm. Shiver, on the 19th July, 1866. Assuming that, as to the $1,500, he was an antecedent creditor, there would yet remain of the judgment $3,919, besides interest, an amount exceeding the price at which the premises were sold. This arose from the indebtedness of the father to the son, on account of the transaction with the banks, and the character of this claim we will therefore alone consider. It does not appear from the brief on what cause of action the confession of judgment was founded. We are prevented from supposing that it was on the notes of Wm. Shiver transferred by the bank to R. C. Shiver, which might raise a question of some interest as to the position in which he could be regarded in respect to them, for the bill alleges that " he paid the debt of his father in bank notes at par, for which he had paid not more than twenty-five cents on the dollar," and prays, among other things, that if the confession cannot be vacated for fraud, " it may be reduced to the amount actually paid for the notes of William Shiver." If he satisfied these notes at the request of his father, which does not appear to be controverted, the liability of the father to him arose at the time of the payment, and from that period alone was he a creditor. A confusion has arisen as to his relation, by viewing him at times as the purchaser of the debts from the bank, which is at variance with the testimony.

It was competent for William Shiver to contract with his son for the payment to him of the full amount due on the notes, if he would pay and satisfy them. Holding, therefore, that as to this portion of the debt, he occupied the position of a subsequent creditor, and that the debt is to be estimated at the sum recognized by both of them,

the only further enquiry is, whether the agreement of William Shiver with the plaintiff, Boyce, amounted to an equitable mortgage, and if so, whether it can prevail against the said R. C. Shiver, as such a creditor without notice?

The doctrine of lien, by equitable mortgage, either arising from imperfect attempts to mortgage, or to devote specific property to the payment of a particular debt, or established "as implied from the agreement of the parties, or the justice of the case," or even created by the deposit of title deeds, has long prevailed in England, and has been recognized by our Courts. The principle is not confined to the lien by mortgage only, but extends even to agreements for sale of real estate, and permits the equitable interest thus raised to prevail against a subsequent creditor, though holding by a general lien. In fact, in the case of the *Bank* vs. *Campbell*, 2 Rich. Eq., 191, effect was given to the equitable interest against the legal title of a purchaser deriving it from a sale under a subsequent lien. To what extent this Court might be willing to adopt the principle there announced, it is not necessary now to determine, for the plaintiff's counsel here, so far from insisting on the doctrine therein declared, concedes "that by general principles, and without reference to recording acts, no equity can stand against a *bona fide* purchaser for valuable consideration, without notice." R. C. Shiver, however, does not occupy that position, for he purchased while the cause was pending, and can therefore be regarded only as claiming as a subsequent creditor, without notice, and must stand or fall by the consequences which follow that relation. The plaintiff, according to the rule maintained, both by the Courts in England and this State, is entitled to the relief which he seeks, unless estopped by the provisions of the Act of 1843, 11 Stat., 256.

It is contended for the plaintiff that equitable mortgages are not within the recording Acts. This is true so far as they are recognized as creating rights in themselves, binding all who were parties to their creation, and, so far as they do not come within the letter or spirit of any legislative prohibition, which refuses to give effect to a perfect, legal mortgage, unless recorded as by law provided and required. Before the Act of 1843, a written mortgage, complete in form, but not recorded, was preferred to a subsequent creditor without notice. A mortgage, conferring only an equitable right, frequently incapable in itself of being recorded, was good, too, against such subsequent creditor, but neither could take precedence of a subsequent purchaser for valuable consideration without notice.

The plain and manifest object of the Act was to destroy the distinction in the position of the subsequent creditor and purchaser, and to place them both on the same footing.   While this is not denied as to those claiming under mortgages in legal form, it is insisted that the Statute works no change in the mortgage which, by the very nature of it, cannot be recorded.   To say that the validity which the Legislature withholds from a legal mortgage, for want of recording, shall be given to an equitable mortgage, which may be known only to the parties interested in it, and then often relying on human testimony for its purposes and intention, would be to charge the law-making power with an inconsistency too gross and violent to be entertained for a moment.

The wisdom and policy which dictated the Act, to suppress the mischief it was intended to subdue, must be extended to all contracts and agreements through which an equitable lien by way of mortgage can be asserted.   The consequence of imparting validity to unrecorded mortgages wrought most injurious consequences, by depreciating the value of real estate, which to some extent depended on the facility of the means of ascertaining its title.

In a country where land is often changing hands, freed from, and unfettered by the laws which confine it to hereditary succession and descent, the admitted policy is to afford a ready mode of discovering all changes in the title, or incumbrances upon it.   This is not only impaired, but prevented by giving effect to secret conveyances, which are seldom brought into notice until some innocent party is to be injured by their introduction.   The proposition of the plaintiff seeks to place an equitable mortgage upon a better footing than a duly executed mortgage.   It is admitted that if the plaintiff had a complete mortgage of the land, it could not prevail against the defendant, R. C. Shiver, for want of recording; why? because he had no notice of it; and yet it is claimed at the same time, that his unwritten equitable mortgage,· growing out of the transaction between him and William Shiver, is to operate to the prejudice of R. C. Shiver, who, in ignorance of it, became his creditor.   It would seem that the proposition, by its mere statement, refutes itself.

*Grimestone* vs.  *Carter,* 3 Paige, 437, referred to as an authority, proceeded upon the ground that the purchaser had notice of the possession which was sufficient to put him on enquiry.   It was a priority sought against a subsequent purchaser without notice, which it is admitted in the argument, for the motion before us cannot prevail in this State.   So far as the case is to have any force as estab-

34

lishing an equitable claim, it will be remembered that the Chancellor (p. 439) remarks that such claims are " expressly excepted from the provisions of the Statute (1 R. S., 762, § 38,) requiring conveyances to be recorded." So far from any disposition to extend the provisions now existing by law, in favor of secret liens, we feel that the highest considerations of public policy require that they should be held within their prescribed bounds. There is not a single modern writer, whose opinion carries weight, who does not regret that the Courts ever favored the introduction of secret liens on property, and many of the most eminent Judges of England, while they felt bound from precedent and authority to sustain them, denied the wisdom and policy of the rule which permitted them, and but few Judges in our country, whilst also following the authority of names which preceded their own, have failed to declare their determination not to extend them beyond the limits to which they have been carried.

We live in a day of enterprise and commerce, and no lien on property of any character should avail unless an opportunity is afforded to the public to be informed of it.

It is asked " if it was the intention of the Act of 1843 to cut up by the roots the whole doctrine of constructive trusts, as administered by this Court?" While we answer that such may not have been its purpose, we at the same time hold that effect cannot be given, as against a subsequent creditor without notice, to an agreement or transaction through which an equitable lien is asserted and claimed.

The case is a hard one on the plaintiff, who, in his dealing with William Shiver, has exhibited a generous and liberal, though a misplaced confidence, but we cannot deprive the son of his right because the father has violated his trust to the plaintiff, who possessed him with the legal title, and thus permitted him to gain credit on the faith of it.

We do not think, however, that it is a case for costs against the plaintiff.

It is ordered that the motion be dismissed—William Shiver to pay all the costs, and in case of his inability to do so, each party to pay his own.

*Willard*, A. J., and *Wright*, A. J., concurred.